SEAN P. HEALY, SB #018393
Sean.Healy@lewisbrisbois.com
KATHRYN HONECKER, SB #020849
Kathryn.Honecker@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Phoenix Plaza Tower II
2929 North Central Avenue, Suite 1700
Phoenix, Arizona 85012-2761
Telephone: 602.385.1040
Facsimile: 602.385.1051

JON P. KARDASSAKIS, CA Bar No. 90602
Jon.Kardassakis@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

*Attorneys for Defendant Grand Canyon University*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Carson Little,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Grand Canyon University,<br><br>　　　　Defendant. | Case No. 2:20-cv-00795-SMB<br><br>**DEFENDANT GRAND CANYON UNIVERSITY'S MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFF'S DAMAGES EXPERT MARK KANTROWITZ**<br><br>*The Honorable Susan M. Brnovich* |

127143854.1

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL BACKGROUND ........................................................................................ 4

    A. Kantrowitz's Opinions And Assumptions......................................................... 4

    B. Kantrowitz is Unqualified to Opine on Breach of Contract Damages and Fails to Follow An Accepted Methodology ............................................. 7

III. LEGAL STANDARD .................................................................................................... 7

IV. ARGUMENT.................................................................................................................. 9

    A. Kantrowitz is Unqualified to Offer Opinions on Class Damages ................... 9

    B. Kantrowitz's Opinions Are Not Reliable ....................................................... 11

        1. Kantrowitz Failed to Use a Generally Accepted Methodology ......... 11

        2. Kantrowitz's Opinions Lack Sufficient Facts and Data...................... 13

    C. Kantrowitz's Opinions Are Not Relevant ...................................................... 15

        1. Kantrowitz's Model Does Not Fit The Case ..................................... 15

        2. Kantrowitz's Opinions Are Not Helpful to the Trier of Fact............. 17



127143854.1

i

Defendant Grand Canyon University ("GCU") moves to exclude the testimony and report of Plaintiff's damages expert Mark Kantrowitz. This motion is made pursuant to Federal Rules of Evidence 401, 402, 403 and 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). This Motion is based on this Memorandum of Points and Authorities, the Declarations of Jon Kardassakis ("Kardassakis Decl."), Tim Griffin in Support of Defendant Grand Canyon University's Motion for Summary Judgment ("Griffin Decl.") (previously filed as Dkt. 131-3), Sarah Castro in Support of Defendant Grand Canyon University's Motion for Summary Judgment ("Castro Decl.") (previously filed as Dkt. 131-2), and Junette West in Support of Defendant Grand Canyon University's Motion for Summary Judgment ("West Decl.") (previously filed as Dkt. 131-4), the Court's file, and such other matters as the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiff's Complaint alleges two claims for Breach of Contract (one alleging breach of contract to provide room and board to GCU students and a second alleging breach of contract regarding other fees paid by GCU students) and two claims for Unjust Enrichment (one for room and board and one for other fees). Complaint, Dkt. 1. On January 28, 2022, the Court granted class certification of Plaintiff's two breach of contract claims and denied class certification of the two unjust enrichment claims. Order, Dkt. 72.[1]

Plaintiff Carson Little seeks to rely on a damages expert for the class claims and has served an Expert Report of Mark Kantrowitz that purports to "summarize[] the student finance information, accounting methods, and calculations [Kantrowitz] used to arrive at the amount of refunds due to all students enrolled in on-campus classes at Grand Canyon University ("GCU") for the Spring semester who were charged and paid fees for services, facilities, resources, activities and/or events that were not provided, in whole or in part, during the Spring 2020 semester (Class Members")." Kardassakis Decl., Ex. 1, Expert

---

[1] The Court had previously dismissed two Conversion claims. Order, Dkt. 40.



Report of Mark Kantrowitz ("Report") at 1. Kantrowitz's opinions and testimony should be excluded because: (1) they are not relevant to the two breach of contract claims—the only claims the Court certified for class treatment (FRE 401 and 402); (2) fail to meet the standard for the admission of expert testimony (FRE 702); and (3) if there is any relevance, the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence (FRE 403).

Kantrowitz testified that his task was not to calculate damages for the breach of contract claims consistent with Arizona law. He is not an attorney, he has not studied what Arizona law allows as damages on a breach of contract claim and he does not purport to calculate damages awardable for the breach of contract claims. Rather he simply offers his own opinions as to what he believes would be fair refunds of fees paid:

> Q: Was it your task to measure damages for each of the – based on each of the legal theories in the complaint or only some of them?
> A: My task was to measure damages as I saw them with regard to the relationship between GCU and the students. . . .
> Q: There were different legal theories alleged in the Complaint. What I'm trying to find out is, was it your task to measure damages assuming the validity of a particular legal theory, or assuming the validity of all the legal theories, or something different?
>   MR. MILLER: Object to the form.
> A: I wasn't asked to evaluate particular legal theories and then calculate the damages based on that specific theory. I was asked to calculate the damages based on my judgment as to the costs that had been paid by the students and the costs – the services and products that I felt they had not received.

Kardassakis Decl., Ex. 2, Deposition of Mark Kantrowitz ("Kantrowitz Depo.") at 38:15–39:10).

> Q: Do you know whether Arizona has law on how you measure damages for different legal theories?
> A: I'm not an attorney. I don't know the Arizona laws.

Kantrowitz Depo. at 42:2–5.

> Q: Okay. Did you undertake to measure damages that are awardable under

```
                    Arizona law specifically on a breach-of-contract theory?
            A:      No.
```

Kantrowitz Depo. at 43:6–9.

```
        Q:      Do you know what the measure of damages is under Arizona law for a
                breach-of-contract theory?
        A:      No.
```

Kantrowitz Depo. at 43:18–20.[2] Kantrowitz's opinions are "not based on the contracts. It was based on equity, what would be an equitable refund." Kantrowitz Depo. at 44:3–8. "It's based on [his] experience working with thousands of students that their families over a few decades on what they typically expect. …" Kantrowitz Depo. at 44:9–17. Kantrowitz's judgment as to what's equitable is not guided by Arizona law:

```
        Q:      Is your judgment as to what's equitable guided at all by Arizona law?
                    Mr. Miller: Object to the form of the question.
        A:      No.
```

Kantrowitz Depo. at 46:20–24. Kantrowitz's opinions based on what he thinks would be an "equitable refund" for Class Members is not relevant to the breach of contract claims that the Court certified and should be excluded on that basis.

      Additionally, Kantrowitz lacks education, training, or experience to qualify him to testify on an appropriate award of damages for breach of contract. He readily admits that the prorated refund method he offers is his own creation, not based on any recognized or accepted methodology, accepted professional standards, or literature. Kantrowitz Depo. at 72:17–73:13. Kantrowitz's opinions are not based on any contracts or any specific legal theory, but rather on what he believes would be an equitable refund, *id.* at 38:15–39:10, 44:3–8, which is wholly irrelevant to the breach of contract claims that the Court certified. As shown below, any of these bases supports the Court granting this Motion and ordering that Kantrowitz's opinions and testimony be excluded.

---

[2] Kantrowitz also does not know what the measure of damages is under Arizona law for an unjust enrichment theory.  Kantrowitz Depo. at 43:21–23.

## II. FACTUAL BACKGROUND

### A. KANTROWITZ'S OPINIONS AND ASSUMPTIONS

Kantrowitz opines that Class Members are entitled to "prorated refund amounts." Report at 5. For example, he opines that a "refund of housing fees should be prorated based on the percentage of days remaining, according to the Spring 2020 housing calendar/contract, and when GCU told students to leave their on-campus GCU housing." Report at 5. He cites no evidence to support his claim that "GCU told students to leave their on-campus GCU housing." Kantrowitz testified, "March 23rd was the date they were told to leave the campus." Kantrowitz Depo. at 111:15–21. There is, however, no basis for this. On March 23, 2020, GCU offered that it "would provide a housing credit for those students who have moved off campus by the end of day on Wednesday, March 25. Students need only to clarify in the personal departure plan of their housing portal by the end of the day on Wednesday whether they intend to stay on campus or return home. Students can return to campus at their convenience any time prior to April 23 to move out their belongings." Griffin Decl. ¶ 13 and Ex. 6 at 35; Castro Decl. ¶¶ 13–14. There was no March 23 communication telling students they were required to leave the campus.

In trying to explain his method, Kantrowitz offered inconsistent and confusing testimony. Kantrowitz agreed that if a student stayed in his or her on-campus housing until the end of the semester, that student should not recover anything as a refund of housing fees. Kantrowitz Depo. at 62:24–63:4. He acknowledged that "if they didn't move out, they were continuing to live in the dorm room, then they wouldn't be entitled to compensation for being prevented from living in the dorm room. So international students, for example, had nowhere else to go. So they remained in the dorm." *Id.* at 60:8–16. He conceded that students who did not move out should not receive any refund:

> Q: So those students who stayed in the dorm would not receive any money under your model. Correct?
> A: They wouldn't receive any refund of the housing charges because they weren't prevented from receiving housing.

*Id.* at 60:17–21. But he testified that he "never received data that showed the exact date that every student left." *Id.* at 52:19–53:1. He "was not provided with data on the actual move-out dates." *Id.* at 63:5–13. He knows "there were some students, like international students, who didn't leave," but he assumes (with no evidence to support the assumption) that "most of the students left pretty quickly after they were told to leave." *Id.* at 52:10–18. He believes "less than 10 percent" continued to live in the dorm until the end of the semester." *Id.* at 60:22–24. His "belief" is not based on any data as to when students actually moved out. He considered "the spreadsheet that GCU provided that shows when students expected to move out." *Id.* at 60:22–61:23. This was the students' self-report of what their plan was, not what they actually did, and he simply assumes (based on no evidence) that all students followed their reported plan. *Id.* at 60:22–61:23. The evidence is contrary to his assumption. *See, e.g.*, Castro Decl. ¶ 6; Ex. 2 at 28 of 53 (GCU-L000018) (Plaintiff Little reporting, "I plan on moving out early (taking belongings and returning room key)"). But Plaintiff Little did not take his belongings and return his room key early. Plaintiff returned to GCU's campus many times after March 25, 2020, including seven entries to his on-campus apartment building on March 30, 2020; six entries on April 4, 2020, three entries on April 7, 2020; two entries on April 14, 2020; two entries on April 20, 2020; and fifteen entries when he finally moved his belongings out on April 22, 2020. Castro Decl. ¶ 12, Ex. 13 at 33:23–34:4 ("[A]ccording to the log, this student continued to use their key fob up through April 22."); ¶ 17, Ex. 14. Plaintiff turned in his apartment keys after-hours on April 22 or on April 23, 2020. Castro Decl. ¶¶ 20–21, Kantrowitz made no inquiry to determine whether Little moved out when he reported he would. Kantrowitz Depo. at 62:16–23 ("I do not know one way or the other."). He does not know what day Little moved his belongings out of his apartment. Kantrowitz Depo. at 83:17–19. He acknowledges reading that Little continued to "access[] his belongings that were in the dormitory, but [was] not living in the dormitory" after his planned move-out date. *Id.* But he ignored this evidence. Additionally, Kantrowitz admits that the spreadsheet he relied on showed that students reported they planned to move out on different dates. *Id.* at 67:8–17.

1  But he ignored the differences when he calculated the refunds: "I calculated based on the
2  dates that they were told to move out. I did not calculate based on any variations in their
3  planned move-out dates or their actual move-out dates other than students who didn't
4  move out at all." *Id.* at 67:20–68:6. Contrary to the evidence of varying move out dates, his
5  damages model awards the same dollar amount to a student who moved out on March 25
6  as it would for a student who moved out on April 1 or April 8 or April 25. *Id.* at 66:6–17.
7  There is no legal basis for this method. It is inconsistent with Arizona law on measuring
8  damages for breach of contract.

9  As a second example, he opines students should be refunded a percentage of the
10 parking fees they paid. Report at 11–12. That is not based on evidence that GCU promised
11 anything that was not provided in return for the parking fee. His opinion is that students
12 should be refunded a portion of the parking fee based on his (unfounded) belief that
13 students were told to vacate campus on March 23 and he thinks even students who stayed
14 and continued to park on campus until the end of the semester should receive refunds:

> Q: Your analysis assumed that no students who paid the parking fee continued to park on campus after March 25. Correct?
> A: Don't make any assumptions. All I know is that they paid certain amounts and that they were told to vacate the campus on March 23rd. I don't have any data that says whether or not anybody parked on campus or not.
> Q: But you propose to give them back money. Is that based on the assumption that they didn't park on campus?
> A: I propose that they should be given a refund because they were told they needed to vacate the campus. And they had paid parking fees for the duration of their stay on campus. They weren't able to use that based on the date they were told to vacate.

23 Kantrowitz Depo. at 116:7–22. Kantrowitz's opinions are all untied to what Arizona law
24 allows for breach of contract, are unsupported by (and often contradicted by) the evidence
25 and does not follow any accepted method to calculate damages. *See generally* Report.

### B. KANTROWITZ IS UNQUALIFIED TO OPINE ON BREACH OF CONTRACT DAMAGES AND FAILS TO FOLLOW AN ACCEPTED METHODOLOGY

Kantrowitz's Report lists his qualifications. Report at 19–21. This includes that he "earned two Bachelor of Science degrees from the Massachusetts Institute of Technology in 1989, one in mathematics and one in philosophy, and a Master of Science degree in computer science from Carnegie Mellon University in 1991. [He is] an alumnus of the Rickover Science Institute (RSI) in 1984, and:

> My opinions are based on my personal experience and expertise as a thought leader in all aspects of planning and paying for college, including student financial aid, student loans, education tax benefits, and saving for college. I have served as publisher of several websites that have helped more than 100 million families plan, save, and pay for college. I have written numerous articles that were published on these websites and in traditional news media. I have personally responded to thousands of questions from consumers, financial professionals, educators and policymakers. I have given talks, both online and in person, on these topics, including Q&A sessions open to the public. ¶ I am President of Cerebly, Inc. (formerly MK Consulting, Inc.), a consulting firm focused on computer science, artificial intelligence and statistical and policy analysis. …

Report at 19–21. His testimony adds that he "spent 12 years studying various moral ethical systems in elementary, secondary school, including things like various religions, their moral standards, and Talmud, the bible, thinks like that." Kantrowitz Depo. at 95:23–96:7. Kantrowitz has no legal training. Kantrowitz Depo. at 70:8–12. He never published in a legal journal. *Id.* at 70:13–15. He has no experience testifying as an expert on breach of contract damages. Kantrowitz Depo. at 29:6–8. His method is not based on any accepted method of calculating damages or any professional literature but instead is simply his own unique creation based on what he thinks would be fair. Kantrowitz Depo. at 72:17–73:13. Kantrowitz's analysis of what a reasonable refund would be is not based on economics, legal theories, or anything else of relevance, rather, he determined what is fair based on him having a "high moral standard." Kantrowitz Depo. at 93:7–94:6.

### III. LEGAL STANDARD

Federal Rule of Evidence ("FRE") 401 provides the test for relevance: "Evidence is



relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Irrelevant evidence is not admissible. FRE 402. Kantrowitz's opinions of what he thinks would be fair, untied to Arizona law for breach of contract, with no nexus to accepted methods or professional standards for calculation of damages and ignoring the facts of the case, fail this test and require exclusion.

FRE 702 provides that expert opinion is only admissible if it satisfies each of the following four prerequisites by a preponderance of the evidence:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FRE 702; *see* FRE 702 Advisory Committee's Note (2000 Amendment); *Daubert*, 509 U.S. at 592 n.10; *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) ("It is the proponent of the expert who has the burden of proving admissibility.") While personal experience, rather than formal education, may qualify a witness to be an expert in a particular area, "[a]n expert basing his opinion solely on experience 'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Haldiman v. Cont'l Cas. Co.*, No. CV-13-00736, 2014 U.S. Dist. LEXIS 2000936, *25–26 (D. Ariz. Aug. 25, 2014). Even after a court has determined that a witness qualifies as an expert within the meaning of Rule 702, the expert's testimony may only be admitted if the judge determines that "the expert's testimony reflects (1) 'scientific knowledge,' and (2) will assist the trier of fact to understand or determine a material fact at issue." *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1228 (9th Cir. 1998) (citing *Daubert*, 509 U.S. at 592). The focus of inquiry "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

District courts act as gatekeepers to ensure that they only admit expert opinions that



127143854.1                                         8

are both *relevant* and *reliable*. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Expert opinions lacking relevancy or reliability are inadmissible and must be excluded. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). *Daubert* requires a "preliminary assessment of whether the reasoning or methodology underlying the testimony is [1] scientifically valid and [2] … properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592–93; *United States v. Freeman*, 498 F.3d 893, 901 (9th Cir. 2007); *Medcalf v. Uzzell*, No. CV-20-00997, 2021 U.S. Dist. LEXIS 223178, *4 (D. Ariz. Nov. 18, 2021). In a class action, the inability of a damages model to satisfy Rule 702 is both a merits issue and bears directly on the plaintiff's ability to satisfy Rule 23 requirements. *In re High-Tech Emp. Antitrust Lit.*, 985 F. Supp. 2d 1167, 1186 (N.D. Cal. 2013) ("Common questions of fact cannot predominate where there exists no reliable means of proving classwide [sic] injury in fact."). Kantrowitz's opinions fail FRE 702's test.

Even if the Court were to find any relevance to Kantrowitz's opinions, his opinions should be excluded pursuant to FRE 403: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403.

## IV.  ARGUMENT

Kantrowitz opines that GCU has to refund to students "a prorated amount of the fees paid based on the reduction in the amount of time during which the product, facility, resource, activity or service associated with that fee was reasonably available to the students." Report at 4. He bases his opinion on what he speculates are students' "reasonable expectations." Report at 3. In addition to being wholly unqualified to offer an expert opinion on damages, Kantrowitz's opinions are neither reliable nor relevant to the breach of contract claim that the Court certified for class treatment and must be excluded.

### A.  KANTROWITZ IS UNQUALIFIED TO OFFER OPINIONS ON CLASS DAMAGES

Expert opinion testimony is inadmissible unless "the proposed witness's qualifying training or experience, and resultant specialized knowledge, are sufficiently related to the

issues and evidence before the trier of fact [such] that the witness's proposed testimony will be of assistance to the trier of fact." *In re Apollo Grp. Inc. Sec. Litig.*, 527 F. Supp. 2d 957, 960 (D. Ariz. 2007). "Even where a witness has special knowledge or experience, qualification to testify as an expert also requires that the area of the witness's competence matches the subject matter of the witness's testimony." *See* 29 Charles A. Wright et al., *Federal Practice & Procedure* § 6265 at 255 & nn.34 & 35 (1977).

Kantrowitz has no formal training or experience in economic analysis or standard economic modeling. Report at 21; Kantrowitz Depo. at 95:23–96:16. His educational background consists of bachelor's degrees in mathematics and philosophy and a master's degree in computer science. Report at 21. Kantrowitz's expertise relates to planning and paying for college and the computer programming language Common Lisp. Report at 19; Kantrowitz Depo. at 203:6–11 ("Q: What is your area of expertise that you're testifying on in this case? A: My area of expertise is the financial aspect of planning and paying for college such as college costs and the money that students pay for those college costs."), 24:16–17 ("A: I'm an expert on the programming language Common Lisp."). His opinions about the existence and amount of the Class's alleged damages on a breach of contract claim are well outside his expertise.

Kantrowitz's prior experience as an expert witness is limited to testifying about which loans are dischargeable in a bankruptcy proceeding, Kantrowitz Depo. at 17:12–25, 21:3–14, 23:1–7; what is considered a qualifying expense for a 529 college savings account, *id.* at 12:17–13:2; and that whole life insurance policies are "worthless," *id.* at 18:19–25. The only damages that he has calculated in a case are related to damages from the failure to properly capitalize interest on federal student loans. *Id.* at 13:8–24.

Kantrowitz has done nothing to learn what damages are allowed under Arizona law on a breach of contract claim. While an economist may be qualified to offer opinions on such topics after reviewing the relevant data and evidence, Kantrowitz is not so qualified and has ignored data and failed to review available data. *See* Report at 22–23 (listing the documents Kantrowitz reviewed); Kantrowitz Depo. at 34:2–36:25; 67:8–12 (showing

Kantrowitz ignored the different dates students moved out and assumed they all moved out on the same date); 82:14–21 (demonstrating Kantrowitz did not know when Little stopped using his dorm because he never examined the logs. Accordingly, his testimony is inadmissible. *United States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000) (proposed expert's expertise in international finance insufficient to qualify witness to testify regarding authenticity of security instrument); *Liberty Life Ins. Co. v. Myers*, No. CV 10-2024-PHX-JAT, 2013 U.S. Dist. LEXIS 18811, at *20–21 (D. Ariz. Feb. 11, 2013) (proposed expert's expertise in the processing of life insurance claims did not qualify witness to opine on whether the insurance company "assumed the risk" that the insured was alive when it paid out the policy). Therefore, Kantrowitz's opinions must be excluded.

## B. KANTROWITZ'S OPINIONS ARE NOT RELIABLE

### 1. *Kantrowitz Failed to Use a Generally Accepted Methodology*

Kantrowitz presents no support that his opinions are the product of reliable principles and methods generally accepted in the scientific community for calculating breach of contract damages. Rule 702 requires a "sufficiently rigorous analytical connection between [the] methodology and the expert's conclusions." *Nimely v. City of N.Y.*, 414 F.3d 381, 396 (2d Cir. 2005). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997). Expert opinions must have "a traceable, analytical basis in objective fact." *Bragdon v. Abbott*, 524 U.S. 624, 653 (1998). The court must "assess the [expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). Experts must be able to "explain [their] methodology and demonstrate in some objectively verifiable way that [they have] both chosen a reliable scientific method and followed it faithfully." FRE 702 Advisory Committee's Note (2000 Amendment)); *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1319 n.11 (9th Cir. 1995) ("*Daubert II*").

Courts considers: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the theory or technique is generally accepted within the relevant scientific community; (4) the known or potential rate of error of the technique or theory when applied; and (5) the existence and maintenance of standards controlling application of the technique. *Daubert,* 509 U.S. at 593–94. Kantrowitz meets none of these tests:

> Q: The model that is discussed in your report, is that a model that you developed, so it's your original work, or did you copy that from some other source?
> A: My original work.
> Q: So is it correct I wouldn't be able to look at a professional journal or treatise and find anywhere where any published work says, this is the way you should calculate awards for this type of case?
> A: Correct.
> Q: Has it been peer reviewed at all?
> A: No.
> Q: This just simply reflects your opinion of how compensation should be awarded in this case?
> A: Correct.
> Q: Did you review any professional materials to see whether your model is in accord with published professional standards or not?
> A: No.
> Q: So is it fair to say you have no idea whether your model is consistent with or inconsistent with published standards for awards in these type of cases?
> A: Correct.

Kantrowitz Depo. at 72:17–73:13.

Kantrowitz has no working papers or notes used in preparing his report. Kantrowitz Depo. at 146:11–21. If someone wants to check his work and calculations, he is unable to present supporting documentation to prove his conclusions. Kantrowitz Depo. at 146:22–25. Kantrowitz cannot rely on a methodology neither accepted in the field, tested, peer reviewed, or published in peer reviewed journals and that cannot be tested or checked. "Thus, when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger*

*Corp.*, 303 F.3d 256, 266 (2d Cir. 2002).

### 2. *Kantrowitz's Opinions Lack Sufficient Facts and Data*

Rule 702 requires an expert's testimony be "the product of reliable principles and methods" and that he "reliably appl[y] the principles and methods to the facts of the case." FRE 702. An expert's opinion is not reliable if the expert fails to review data that was available—even if he believed it to be unavailable. *Faulkner v. Arista Recs. LLC*, 46 F. Supp. 3d 365, 380–81 (S.D.N.Y. 2014) (excluding expert report where expert failed to review data that was produced and available); *Celebrity Cruises Inc. v. Essef Corp.*, 434 F. Supp. 2d 169, 182–83 (S.D.N.Y. 2006) (excluding damages expert who was not aware of the availability of "actual performance data" and "declined to incorporate their actual growth rates into her methodology" once she became aware of data). An expert opinion may not be based on assumptions of fact without evidentiary support. *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 830–31 (9th Cir. 2001) (excluding expert testimony "not sufficiently founded on [the] facts" of the case); *Tucker v. Cty. of Riverside,* No. EDCV 16-02275 JGB (DTBx), 2018 U.S. Dist. LEXIS 228084, at *35 (C.D. Cal. May 23, 2018) ("Expert testimony…is inadmissible when the facts upon which the expert bases his testimony contradict the evidence") (quoting *Greenwell v. Boatwright*, 184 F.3d 492, 496–97 (6th Cir. 1999) (if factual underpinning of expert opinion is unsound, it is inadmissible).

Kantrowitz assumes facts and ignores facts making his method unreliable. Kantrowitz based his calculations on the students' reported plans to move out and assumed the students followed their reported plans. Kantrowitz Depo. at 61:3–23. Regardless of when a student actually vacated his or her on-campus housing, all students would receive the same amount of cash as a housing fee refund. *Id.* at 65:22–66:17.

Kantrowitz assumes all GCU students were forced out of their housing during the Spring 2020 Semester on the same day. (Report at 5–6; Kantrowitz Depo. at 67:8–12) despite relying on a spreadsheet that showed varying planned move out dates and having no data on when students actually moved out. His assumption that GCU closed down the campus facilities is contrary to evidence as GCU's campus remained open. West Decl. ¶¶

4, 5, 18, 42, 44. GCU encouraged students to remain away from campus if they had somewhere safe to be, Kardassakis Decl., Ex. 3, Deposition of Junette West ("West Depo.") at 60:20–25, but students had the option to remain in their dorms, *id.* at 69:13–19.

Kantrowitz did not inquire when Plaintiff fully vacated his dorm. Kantrowitz Depo. at 62:16–18 and 82:5–23. Even though he had a spreadsheet that listed the different dates students reported they planned to move out, he ignored the differences: "I calculated based on the dates that they were told to move out. I did not calculate based on any variations in their planned move-out dates or their actual move-out dates other than students who didn't move out at all." Kantrowitz Depo. at 67:20–68:6. He awards the same dollar amount to a student who moved out on March 25 as for a student who moved out on April 1 or April 8 or April 25. Kantrowitz Depo. at 66:6–17. There is no legal basis for this method to calculate breach of contract damages.

Although he was unaware what food facilities the University had promised to make available to students, Kantrowitz Depo. at 97:5–7, Kantrowitz assumed GCU breached food contracts with students by not allowing them to use their Dining Dollars on campus. Kantrowitz Depo. at 97:25–98:9. He ignored that students spent approximately $400,000 of Dining Dollars after his claimed move-out date. Kantrowitz Depo. at 98:10–14. Kantrowitz did not consider whether students who paid a Parking Fee continued to park on campus during the end of the Spring 2020 Semester. Kantrowitz Depo. at 112:14–20 ("Q: Do you know whether some students continued to park their cars on campus even after they left? A: I have no information one way or another. If you provide with me with that information, I can answer that. Otherwise, that wasn't something that I reviewed for my report."). Although Kantrowitz knew there were students who remained on campus, he did not consider that information when making his calculations. Kantrowitz Depo. at 166:8–167:3. Kantrowitz would refund parking fees to all students, even students who continued to park on campus through the end of the semester. Kantrowitz Depo. at 118:8–23.

### C. KANTROWITZ'S OPINIONS ARE NOT RELEVANT

#### 1. *Kantrowitz's Model Does Not Fit The Case*

"To be relevant, an expert's testimony must fit the case." *IceMOS Tech. Corp. v. Omron Corp.*, No. CV-17-02575-PHX-JAT, 2019 U.S. Dist. LEXIS 196610, at *50 (D. Ariz. Nov. 13, 2019). "[A] model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). "[C]ourts must conduct a 'rigorous analysis' to determine whether that is so." *Id.*

A breach of contract claim sounds in law, not equity. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002); *Morado v. Bustamante*, No. 1 CA-CV 21-0590, 2022 Ariz. App. Unpub. LEXIS 594, at *14 (Ct. App. July 26, 2022). Because it is a legal claim, the correct measure of damages for a breach of contract action focuses on the plaintiff's "injury." *Jacob v. Miner*, 191 P.2d 734, 741 (Ariz. 1948). Restitution—the remedy for unjust enrichment—is not the proper measure of damages for breach of contract. *Designee LLC v. Honda Aircraft Co. LLC*, No. 1 CA-CV 19-0592, 2020 Ariz. App. Unpub. LEXIS 681, at *10–11, ¶ 18 (Ct. App. June 23, 2020) (citing *Booe v. Shadrick*, 369 S.E.2d 554, 555–56 (N.C. 1988) (explaining restitution is a remedy for unjust enrichment, and the equitable doctrine of unjust enrichment has no application when "there is a contract between the parties that governs the claim")). "Arizona has long held that damages for breach of contract are those damages which arise naturally from the breach itself or which may reasonably be supposed to have been within the contemplation of the parties at the time they entered the contract." *All Am. Sch. Supply Co. v. Slavens*, 609 P.2d 46, 48 (Ariz. 1980); *accord Jacob*, 191 P.2d at 741. In *Coury Bros. Ranches v. Ellsworth*, 446 P.2d 458, 466 (Ariz. 1968), the Arizona Supreme Court explained that "[t]he proper measure of damages for the failure of [the seller] to provide the [goods] specified in the contract would be the cost of other suitable [goods] …." The Court held

that "[t]he trial court should have restricted the evidence of damages to the cost of acquiring additional [goods]." *Id.* at 523.

      Kantrowitz improperly calculates equitable refunds (*i.e.*, restitution):

> Q:    Does your analysis assume that what we see discussed in your report as to reasonable expectations was a part of any of the contracts entered into with the students?
> A:    It was not based on the contracts. It was based on equity, what would be an equitable refund.
> Q:    So your analysis is based entirely on an equitable refund?
>         MR. MILLER: Object to the form. That's not what the report says. You're misstating the evidence.
> A:    It's based on my experience working with thousands of students and their families over a few decades on what they typically expect. It they pay for something and don't receive it, they want a refund.

Kantrowitz Depo. at 44:3–17. Kantrowitz's judgment as to what is "equitable" is not guided by Arizona law:

> Q:    So is it fair to say then what your report tells us is the dollar amount that you think would be an equitable refund?
> A:    My report calculates the amount that would be an equitable refund to make the students whole.
> Q:    And in terms of what's equitable, that's based your judgment based on your years of experience?
> A:    Yes.
> Q:    Is your judgment as to what's equitable guided at all by any provisions of Arizona law?
>         MR. MILLER: Object to the form of the question.
> A:    No.

Kantrowitz Depo. at 46:12–24. The trier of fact in this breach of contract action does not need Kantrowitz to tell them what in his opinion is equitable.

      One of Plaintiff's breach of contract claims alleges GCU breached its housing contracts. Complaint ¶¶ 60–67. If GCU breached a contract to provide housing and as a result of that breach a student incurred expense to stay in alternate housing, the out-of-pocket expense may be recoverable under Arizona law. *Flowers-Carter v. Braun Corp.*, 530 F. Supp. 3d 818, 846 (D. Ariz. 2021) ("Under Arizona law, consequential damages are available in contract actions, provided the losses are reasonably foreseeable.") (citing

127143854.1        16

*Seekings v. Jimmy GMC of Tucson, Inc.*, 638 P.2d 210, 215 (Ariz. 1981) ("At common law, 'consequential' or 'special' damages are those damages caused by a breach of contract or warranty that can reasonably be supposed to be within the contemplation of the parties at the time of the contracting."); *McAlister v. Citibank*, 829 P.2d 1253, 1257 (Ariz. Ct. App. 1992) ("Consequential damages are those reasonably foreseeable losses that flow from a breach of contract.")). Kantrowitz failed to consider or include out-of-pocket expenses in his analysis. Kantrowitz Depo. at 48:8–16 ("Q: I'm asking specifically if the student moved out and incurred hotel charges to live somewhere else, do you know whether that's something that's recoverable under Arizona law on a breach-of-contract theory? [objection omitted] A: I don't know Arizona law. Therefore, the answer is, I don't know."); Kantrowitz Depo. at 48:24–49:6 ("Q: . . . Under your model of what you believe students should be paid in connection with this case, you do not make any effort to determine whether any students incurred out-of-pocket expenses to find alternate housing. … Correct? A: Correct."); Kantrowitz Depo. at 49:7–14 ("Q: And the same would be true with regard to any type of out-of-pocket expense…. Correct? A: Correct."). Kantrowitz's model does not even attempt to measure damages attributable to Plaintiff's breach of contract theory. It cannot "possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)," and must be excluded. *Comcast*, 569 U.S. at 35.

### 2. Kantrowitz's Opinions Are Not Helpful to the Trier of Fact

Because Kantrowitz's damages model does not measure damages recoverable for breach of contract, which is the only claim that the Court certified for class treatment, Kantrowitz's opinions are not helpful to the trier of fact and on that basis should be excluded. *Yu v. Idaho State Univ.*, 15 F.4th 1236, 1245 (9th Cir. 2021) (Miller, J., concurring) ("[T]o be admissible, expert testimony must be helpful to the trier of fact.").

## V. CONCLUSION

GCU respectfully requests that each of Kantrowitz's opinions regarding Plaintiff's and class members' elements of damages be stricken as unreliable and irrelevant, and therefore inadmissible under *Daubert* and Federal Rules of Evidence 402, 403 and/or 702.

1 | DATED: July 21, 2023

2 |                     LEWIS BRISBOIS BISGAARD & SMITH LLP

By:    */s/ Jon Kardassakis*
       Jon Kardassakis
       Kathryn Honecker
       Attorneys for Defendant Grand Canyon University

127143854.1

18