Adam J. Levitt*
Laura E. Reasons*
Peter C. Soldato*
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Tel.: 312-214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
lreasons@dicellolevitt.com

Matthew S. Miller*
**MATTHEW S. MILLER LLC**
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
Tel.: 312-741-1085
mmiller@msmillerlaw.com

Robert D. Ryan – 014639
**LAW OFFICES OF ROBERT D. RYAN, P.L.C.**
343 West Roosevelt Street, Suite 220
Phoenix, Arizona 85003
Tel.: 602-256-2333
rob@robertdryan.com

* Pro Hac Vice

*Counsel for Plaintiff and the Class*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carson Little, individually and on behalf of all similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Grand Canyon University,<br><br>Defendant. | No. 2:20-cv-00795-SMB<br><br>*The Honorable Susan M. Brnovich*<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE OPINIONS OF PLAINTIFF'S DAMAGES EXPERT MARK KANTROWITZ** |

i

**BACKGROUND**

Plaintiff Carson Little ("Plaintiff") filed this class action on behalf of himself and all similarly situated students seeking to recover damages for the value of fees they paid for services and facilities that Defendant Grand Canyon University ("GCU") did not provide in the fall of 2020. Plaintiff's claims have withstood GCU's challenges on a motion to dismiss and in opposition to GCU's effort to defeat class certification. More recently, GCU also filed a summary judgment motion that Plaintiff has opposed and that is riddled with factual disputes. Now, in its latest effort to try to avoid liability for its actions, GCU attempts to block Plaintiff's damages expert—a well-known and highly regarded expert in higher education costs and financing—relying on the same arguments GCU has already attempted in its failed motion to dismiss, failed opposition to class certification, and pending motion for summary judgment (which also should be denied). GCU's arguments fare no better in this context.

Mark Kantrowitz is undeniably an expert with respect to higher education costs and finances. He has been quoted in well over 10,000 news stories, authored bestselling books, served on relevant and influential boards, testified before Congress and state agencies, counseled hundreds of thousands of families, been relied on by universities, and cited favorably by the United States Supreme Court. It is as if GCU filed this motion based on a playbook approach to litigation where a defendant files every possible motion simply because that's how things are done.

To contort the facts to fit into a motion in limine, GCU mischaracterizes the nature of Kantrowitz's opinions and applies incorrect legal standards. Kantrowitz is not providing scientific testimony. He is providing an opinion based on his substantial and impressive

1

experience as a leading voice in higher education finance. Kantrowitz's testimony is not subject to the rigors of *Daubert.* As this Court has noted in a prior case, "*Daubert*'s tests for the admissibility of expert scientific testimony do not require exclusion of expert testimony that involves specialized knowledge rather than scientific theory." *See Madison Alley Transp. v. W. Truck Ins. Co.*, No. CV-17-03038-PHX-SMB, 2019 U.S. Dist. LEXIS 246876, at *2-3 (D. Ariz. July 12, 2019) (citing *U.S. v. Bighead*, 128 F. 3d 1329, 1330 (9th Cir. 1997)); *see also U.S. v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000). GCU's motion in limine should be denied.

I.  **Mark Kantrowitz, Plaintiff's Expert, is Qualified to Testify in This Case**

Plaintiff retained Mark Kantrowitz, a leading expert in higher education costs and finances, to quantify and opine on class-wide damages.

**A.    Kantrowitz's credentials are impeccable.**

GCU argues that Kantrowitz is not an economist and therefore cannot opine on economic theory. This argument displays either a gross misunderstanding of the nature of Kantrowitz's expertise and opinion or a deliberate attempt to mislead the Court. Kantrowitz is not purporting to testify to economic theory.

As Kantrowitz explained at deposition, he is an expert on the costs of higher education and the related services universities provide in exchange for the fees charged:

Q:   What is your area of expertise that you're testifying on in this case?

A:   My area of expertise is the financial aspect of planning and paying for college such as college costs and the money that students pay for those college costs.

Q:   And as part of that area of expertise are you familiar with the services or facilities that are to be provided for the costs that colleges charge?

A:   Yes.

| | | |
|---|---|---|
| Q: | And do you believe that the knowledge you have is greater than the knowledge that the layperson would have on these issues? | |
| A: | Yes. College costs and financial aid and ways people pay for college are very complicated subjects. I get questions all the time from families and even financial experts about how it works in reality. | |
| Q: | Okay. And are you a professional testifying witness? | |
| A: | No | |
| Q: | What is your core profession? | |
| A: | My core profession is writing and answering questions by all sorts of individuals, including companies, financial aid administrators, students, and families, about planning and paying for college. | |
| Q: | So your professional experience is college planning and college costs and services and facilities that you get for those costs? | |
| A: | Correct. | |
| Q: | Including the cost and fees that are the subject of this case. Right? | |
| A: | Yes. | |
| Q: | And that are the subject of the expert opinion report that you provided in this case? | |
| A: | Yes. | |

See Ex. 1 to Exhibit A, L. Reasons Declaration, Kantrowitz Dep. at 203-204.[1] This testimony is consistent with what Kantrowitz stated in his report: "The opinions expressed in this report are based on my review of documents and information from the lawsuit, my training and experience with respect to finances of higher education, and assumptions as stated in this report. *See* Ex. A-2, Kantrowitz Report at 2.

---

[1] For brevity and clarity, plaintiffs will refer to the exhibits as Ex. A-1, Ex. A-2, etc.

3

Kantrowitz's credentials are impressive.[2] While GCU argues that Kantrowitz has never published in a legal journal, there's nothing magical about publishing in legal journals. Kantrowitz has an extensive publishing history relevant to the issues in this case, including authoring best-selling books concerning the costs of higher education. *See* Ex. A-3, Kantrowitz Decl. ¶¶ 15-18. In addition to his publications:

(1) Kantrowitz has received numerous awards in recognition of his contributions and expertise relative to the costs of higher education. *Id*. ¶ 21.

(2) Kantrowitz has been cited or quoted as an expert in more than 10,000 news reports, including with CNBC, The New York Times, USA Today, Forbes, The Wall Street Journal, Bloomberg, Money Magazine, and many others. *Id*. ¶¶ 13-14

(3) Universities have quoted and relied on Mr. Kantrowitz's expertise. Arizona State University, for instance, cites Mr. Kantrowitz as an expert for financial aid for families on its website. https://admission.asu.edu/parent-blog/financial/9-things-you-have-know-about-financial-aid-college.

(4) Kantrowitz serves on the editorial board of the Journal of Student Financial Aid, is a member of the Board of Trustees of the Center for Excellence in Education and has been a board member of the National Scholarship Providers Association.  He is the publisher of PrivateStudentLoans.guru and StudentAidPolicy.com and a prior publisher of savingforcollege.com.  Kantrowitz Decl. ¶¶ 3, 19.

---

[2] Kantrowitz detailed his credentials in his report (*see* Exhibit 3, at 19), and this information also is publicly available on his website. *See* http://www.kantrowitz.com/kantrowitz/mark.html.

4

(5) Kantrowitz has advised hundreds of thousands of families regarding the costs of higher education through his websites. *Id.* ¶¶ 5-7.

(6) Kantrowitz has been invited to testify before Congress and State agencies on matters related to the costs and financing of higher education and has served on the Editorial Board of the Council on Law in Higher Education, the Bankrate Financial Review Board from 2021 to the present, the editorial board of the Journal of Student Financial Aid from 2011 to the present, and the editorial advisory board of Bottom Line Wealth and Bottom Line Personal from 2008 to present. *Id.* ¶¶ 19-20.

(7) The Supreme Court of the United States recently cited Mr. Kantrowitz's work favorably in the recent *Biden v. Nebraska* decision. *See Biden v. Nebraska*, 143 S. Ct. 2355, 2373 (2023) (citing M. Kantrowitz, Year in Review: Student Loan Forgiveness Legislation, Forbes, Dec. 24, 2020).

To suggest that Kantrowitz is not a qualified expert concerning the costs of higher education and the fees and services associated with those costs is ludicrous and, frankly, a waste of the Plaintiff's and the Court's time and resources.

**B.  Kantrowitz reviewed and relied on data provided in this case and properly calculated the damages owed**.

In order to calculate damages in this case, Kantrowitz reviewed materials made available from this lawsuit. *See* Ex. A-2, Kantrowitz Report, at 22. As explained at the beginning of the report:

> My expert opinion is that Class Members are owed the refunds listed below, and that these refunds must be provided in cash to make Class Members whole. As discussed below, providing refunds as a credit to the students' GCU ledger accounts, as opposed to providing cash refunds, forces students to spend their money within

5

>   the GCU ecosystem or lose the value, denies students of the ability to use their funds as they choose, and reduces the amount of financial aid students would otherwise receive, and thus does not make students whole. The opinions expressed in this report are based on my review of documents and information from the lawsuit, my training and experience with respect to finances of higher education, and assumptions as stated in this report.

*Id*. at 2.

In his report. Kantrowitz explains that he relied on documents produced by GCU and he identifies those documents that were of particular importance. Kantrowitz discusses what students expect to receive for the fees they pay, consistent with his experience, as well as guidance from the U.S. Department of Education. Kantrowitz then details the methodology he followed to calculate the value due to the students as damages, including how he calculated the relevant time periods. Kantrowitz's report is detailed, thorough, and clear. He noted when he had to make assumptions or calculate ranges, and he discussed the information needed from GCU to narrow those ranges.

As Kantrowitz states in his Declaration, anybody using the same data and method would reach the same result as it is straightforward mathematics once the complex data sets have been organized and analyzed. *See* Ex. A-3, Kantrowitz Decl. ¶ 36. There is no need—indeed, no place—for supply and demand analyses as those principles do not apply. GCU students did not pay based on what they chose to use. *Id*. ¶¶ 32-33. It is not an *a la carte* fee system. Students are charged fees and must pay them no matter whether they want or use the service associated with the fee. *Id*. In other words, for example, Spring 2020 GCU on-campus students had to pay a Health Fee (for use of the on-campus health center) whether they used the center or not. GCU does not pro rate fees based on use or demand. GCU has provided no evidence to the contrary.

6

In fact, GCU's witnesses have admitted that all students must pay the fees assessed. *See* Ex. A-6, Junette West (30(b)(6) Designee of GCU) Deposition at p.59-60.

**II.    GCU's Motion is Procedural Defective.**

Defendant's motion seeks to exclude testimony and evidence at trial; this means that the motion, no matter what its title, is a motion in limine. It does not matter that this motion is aimed at expert evidence; it is still a motion in limine *See Wilshire Ins. Co. v. Yager*, 348 F. Supp. 3d 931, 944 (Dist. Ariz. 2018) (motion to strike an expert opinion is a pretrial request to bar evidence and, therefore, is a motion in limine). Local Rule 7.1(l) requires that parties attempt to meet and confer before filing any motions in limine:

> No opposed motion in limine will be considered or decided unless moving counsel certifies therein that the movant has in good faith conferred or attempted to confer with the opposing party or counsel in an effort to resolve disputed evidentiary issues that are the subject of the motion.

Local Rule 7.2(l).  Similarly, this Court ordered the following requirement in its Trial Scheduling Order in this case:

> Pursuant to LR Civ 7:2(1), counsel shall meet and confer to discuss and identify any disputed evidentiary issues that are anticipated to be the subject of motions in limine. The parties are directed to provide the court with a written report of agreements reached at the conference so that the court can enforce such agreements. At the time of filing any motions in limine, counsel shall also provide the court notice that counsel have met in person prior to the filing of said motions in limine or the motion(s) may be stricken.

*See* Dkt 134, Trial Scheduling Order ¶ 2.

GCU failed to abide by the Local Rules and this Court's Order when it filed its contested motion in limine without any effort whatsoever to meet and confer. The motion should be denied for that reason alone. *See, e.g., Wilshire Ins. Co. v. Yager*, 348 F. Supp. 3d 931, 943-44

7

(D. Ariz. 2018) (denying a motion in *limine* to bar expert witness where the moving party failed to meet and confer as required by Arizona Local Rule 7.2(l) and the Scheduling Order in the case), *aff'd. on other grounds*, 816 Fed. Appx. 224. The Local Rules and this Court's order exist for a reason, and they should be enforced.

Trial courts have broad discretion when ruling on motions in limine. *See generally Klungvedt v. Unum Grp.*, No. 2:12-cv-00651- JWS, 2012 U.S. Dist. LEXIS 155972, at *5 (D. Ariz. Oct. 31, 2012). Denying the motion does not mean the evidence will automatically be admitted at trial, nor does it deprive GCU of its ability to contest the evidence at trial. *Id.*; *see also Empire Fire & Marine Ins. Co. v. Patton*, No. CV-17-02159-PHX-JJT, 2019 U.S. Dist. LEXIS 237574, at *5 (D. Ariz. Aug. 26, 2019). Vigorous cross-examination and presentation of contrary evidence are the traditional means of challenging evidence. *See Empire Fire & Marine Ins.*, 2019 U.S. Dist. LEXIS 237574 at *5. Given those well-established legal principles, enforcing the Local Rules and Court orders is the right thing to do and will not prejudice GCU.

**III.   GCU's Motion is Substantively Deficient Because GCU has Misconstrued the Evidence and Applied Incorrect Legal Standards.**

GCU's motion is also substantively defective. GCU has misconstrued the evidence and misapplied the law. Kantrowitz's opinions are based on extensive experience as a leading expert in higher education costs and financing. His opinion is not based on scientific studies or peer-reviewed literature, nor does it need to be. This is not a scientific case.

*A. Kantrowitz has properly opined on damages based on his experience.*

This is not a complex damages case. As this Court ruled when it denied GCU's motion to dismiss, "Plaintiff alleges that he and other class members were damaged by the

8

breach because they were 'deprived of the value of the services the fees they paid were intended to cover." Dkt. 40, at p. 8. The best way to determine the value of the services that were not provided is to look at GCU's charges for those services and then calculate the pro rata value that was not provided. Kantrowitz calculated that number and determined that damages sufficient to compensate the class for its losses would be between $19,969,420.35 and $21,377,324.95. This pro rata approach is the same approach GCU used when it incorrectly calculated refunds for housing in the Spring of 2020, see Ex. A-5, and again when they had to delay the start in the Fall of 2020. *See* Ex. A-6, Junette West 30(b)(6) Dep. at 124:20-125:8. Pro rata is the correct way to calculate damages in this case.

GCU suggests that the only damages that can be awarded in a breach of contract case are the cost of replacement goods or services. GCU is wrong. As the pattern jury instructions make clear, damages can be proven, as in this case, by establishing the value an aggrieved party paid for goods or services they did not receive. *See* RAJI (Civil) CI 17 (7th ed.). That is particularly apropos here where GCU is the only entity that provides the services and facilities in question to its students. It's nonsensical to suggest otherwise and GCU has no contrary evidence.

Kantrowitz properly performed his calculations using data from this case, including data provided by GCU, and he fully explained his methodology. To the extent GCU wants to challenge Kantrowitz's opinions based on GCU's views of the facts,[3] those are matters for cross-

---

[3] The factual arguments are the same arguments GCU made in its pending motion for summary judgment. In its opposition, Plaintiff provided the evidence to refute GCU's arguments and submit this matter to trial. Plaintiff will not re-argue summary judgment in this motion in limine but instead incorporates its summary judgment filings and arguments as if fully stated herein.

examination, not a motion in limine. *See Madison Alley Transp.*, 2019 U.S. Dist. LEXIS 246876 at *4 ("[t]he fact that [GCU] disagrees with the factual findings of the expert is properly handled through cross examination and not precluding the expert's testimony").

GCU's criticism that Kantrowitz used the same beginning date to calculate housing refunds for all students misses the mark and underscores the lengths GCU will go to misstate the record. Kantrowitz used the same methodology GCU used when calculating housing credits:

> Q: When GCU provided the refunds to its students, did it make an individualized determination as to what day they came back and what day they left?
>
> A: No.
>
> Q: They just used the same calculation for everyone depending on which dorm or apartment they were in?
>
> A: That's correct.

*See* Ex. A-2, Kantrowitz Dep. at 192-93. The only difference is that Kantrowitz used the correct dates and correct numbers rather than dates numbers GCU arbitrarily chose for its own benefit and to the detriment of the students. *See* Ex. A-2, Kantrowitz Dep. at 190-95; Ex. A-3, Kantrowitz Report at 6-9;. Plaintiffs learned in discovery that GCU knew the proper calculation of pro-rata refunds, *see* Ex. A-4 (GCU-L002900), but hid that information from the students and announced artificially reduced refunds. *See* Ex. A-5 (GCU-L002899); Ex. A-2, Kantrowitz Dep. at 195 ("Did you see any evidence that Grand Canyon ever told the students that's what it was doing when it was offering housing credits? A: No.").

Finally, GCU takes issue with Kantrowitz's use of the word "equitable" at deposition. GCU makes much ado about nothing. Kantrowitz carefully reviewed the data and calculated the pro rata value. That's a proper measure of damages and it also happens to be fair and equitable.

10

The point of contract damages is to make the aggrieved party whole, no more and no less. *See* RAJI (Civil) CI 17 (7th ed.) ("The damages you award for breach of contract must be the amount of money that will place [*name of plaintiff*] in the position [*name of plaintiff*] would have been in if the contract had been performed."). Kantrowitz's calculations do just that.[4]

### B. Kantrowitz's opinions are based on his experience and, therefore, are not subject to the same review as scientific evidence.

GCU suggests that all expert testimony must be scientific and that all expert witnesses must pass the rigors of *Daubert*. GCU is wrong. "Federal Rule of Evidence 702 requires that a testifying expert be "qualified as an expert by knowledge, skill, experience, training, or education." *Generations At Pinnacle Peak LLC v. Scottsdale*, No. CV-17-0459. 7-PHX-SMM, 2020 U.S. Dist. LEXIS 267416, at *24-25 (D. Ariz. Feb. 12, 2020). There are no hard and fast rules requiring scientific training or peer-reviewed literature. Instead, Fed. R. Evid. 702 "contemplates a *broad conception* of expert qualifications" and "is broadly phrased and intended to embrace more than a narrow definition of qualified expert." *See Hangarter v. Provident Life & Acc. Ins.*, 373 F.3d 998, 1015 (9th Cir. 2004). There is no requirement, for instance, that experts cite or rely on peer-reviewed data, as GCU seems to suggest. *See Walton v. Bridgestone/Firestone, Inc.*, No. CV-05-3027-PHX-ROS, 2009 U.S. Dist. LEXIS 85014, at *33-34 (D. Ariz. Jan. 16, 2009)**.**

---

[4] Kantrowitz explained his use of the word equitable: "I happen to feel that proration is fair to both sides. That it reflects the portion of the services that the students didn't receive. So, in that case, I argued for proration. GCU even used proration in their calculations. They used -- they had some errors in their calculations. So I corrected those errors and calculated what I felt would be a fair reflect – what would make the students whole." Ex. A-2, Kantrowitz Dep. at 45

"The *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Hankey*, 203 F.3d at 1169. Consistent with that precedent, this Court denied a motion in limine and permitted expert testimony in *Madison Alley Transp. v. W. Truck Ins. Co.*, No. CV-17-03038-PHX-SMB, 2019 U.S. Dist. LEXIS 246876 (D. Ariz. July 12, 2019).

In *Madison Ally Transp.,* this Court also stated that "*Daubert*'s tests for the admissibility of expert scientific testimony do not require exclusion of expert testimony that involves specialized knowledge rather than scientific theory." *See Madison Alley Transp*, No. CV-17-03038-PHX-SMB, 2019 U.S. Dist. LEXIS 246876, at *2-3  (citing *United States v. Bighead*, 128 F. 3d 1329, 1330 (9th Cir. 1997). That same rationale applies here. Kantrowitz's opinions are based on decades of experience working with higher education finances. His expertise is beyond reproach. Kantrowitz compiled complex data into understandable numbers and provided a reasonable means for determining the value of the services and facilities that were not provided. That is all that is required. The advisory committee's notes to Rule 702 explain, "experience-based expert testimony is reliable if the expert 'explain[s] how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *U.S. v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003) (quoting Fed. R. Evid. 702, 2000 Advisory Committee Notes).

Kantrowitz has explained how his experience leads to the conclusion reached, why that experience is sufficient, and how his experience applies to the facts. Kantrowitz is able to explain to a jury the services and facilities that students expect to receive in exchange for the

12

fees charged and paid, and he is the only witness in the case who can explain how GCU's actions might negatively impact student financing in subsequent years. There will be no other witness in the case with Kantrowitz's qualifications and experience in higher education costs.

If there remains any doubt about Kantrowitz's qualifications, "caution is merited regarding the exclusion of expert evidence on motions in limine." *FTC v. DIRECTV, Inc.*, No. 15-cv-01129-HSG, 2017 U.S. Dist. LEXIS 13480, at *6 (N.D. Cal. Jan. 31, 2017). Unless the evidence in dispute is inadmissible on all potential grounds, rulings on admissibility 'should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.'") (quoting *Hawthorn Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)). That's a high hurdle that GCU cannot clear.

### C. *Kantrowitz's opinions do not require knowledge of substantive Arizona law.*

As this Court recognized when it denied in part GCU's motion to dismiss, "Plaintiff alleges that he and other class members were damaged by the breach because they were 'deprived of the value of the services the fees they paid were intended to cover." *See* Dkt. 40 at 8. The best way to determine the value of the services that were not provided is to look at GCU's charges for the semester and then calculate the *pro rata* value that was not provided based on the time students were not on campus. That is what Kantrowitz did. Kantrowitz reviewed the data and evidence provided and determined that damages sufficient to compensate the class for its losses would be between $19,969,420.35 and $21,377,324.95.[5]

---

[5] At this time Kantrowitz authored his report, GCU had not provided sufficient data to precisely calculate the value of the dining dollars. Subsequently, GCU produced its expert report which referenced an excel spreadsheet that GCU did not produce in discovery and that Kantrowitz has never been able to review. However, accepting GCU's

13

Kantrowitz's calculations are consistent with Arizona law and with the jury instructions that will be given in this case. *See* RAJI (Civil) CI 17 (7th ed.) (the jury may consider as damages "the return of the value of the things or services that [class members] provided to [GCU] class members paid to GCU"). It is of no consequence that Kantrowitz did not opine on Arizona law, as GCU seems to argue. Kantrowitz is not an attorney and was not retained to provide a legal opinion. Kantrowitz was retained to calculate damages and he's done that. Questions of law remain the province of the Court.

## CONCLUSION

GCU's formulaic *Daubert* arguments miss the mark. "[T]he *Daubert* factors may not apply to testimony that depends on knowledge and experience of the expert, rather than a particular methodology." *Empire Fire & Marine Ins. Co. v.* Patton, No. CV-17-02159-PHX-JJT, 2019 U.S. Dist. LEXIS 237574 at *4-5 (D. Ariz. Aug. 26, 2019). As stated in *Empire Fire*:

> [a]n expert qualified by experience may testify in the form of opinion if his or her experiential knowledge will help the trier of fact to understand evidence or determine a fact in issue, as long as the testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts of the case.

That is the case here. The motion in limine should be denied.

DATED:  August 14, 2023

---

witness's descriptions at face value, Kantrowitz has been able to confirm that the value of the unprovided dining services would be $3,596,249.18. This would put the total damages at $20,918,350.18, further corroborating the reliability of his opinions. *See* Exhibit A-3, Kantrowitz Decl. ¶ 25.

/s/ Peter C. Soldato*
Peter C. Soldato*
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602

*Pro Hac Vice*

***Counsel for Plaintiff and the Class***

# CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2023, I electronically transmitted the attached document to the Clerk of the Court utilizing the CM/ECF System, causing the attached document and Notice of Electronic Filing to be sent to the following, who are registered participants of the CM/ECF System:

SEAN P. HEALY, SB #018393
Sean.Healy@lewisbrisbois.com
KATHRYN HONECKER, SB #020849
Kathryn.Honecker@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Phoenix Plaza Tower II
2929 North Central Avenue, Suite 1700
Phoenix, Arizona 85012
Telephone: 602-385-1040

JON P. KARDASSAKIS
Jon.Kardassakis@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213-250-1800

*Counsel for Defendant*

/s/ Peter Soldato