**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carson Little, | No. CV-20-00795-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Grand Canyon University, | |
| Defendant. | |

Pending before the Court is Defendant Grand Canyon University's ("GCU") Motion for Summary Judgment. (Doc. 130.) Plaintiff Carson Little, individually and behalf of the Class, filed a Response (Doc. 135), and GCU filed a Reply (Doc. 137). The Court heard oral argument on August 15, 2023. After reviewing the parties' arguments and the relevant law, the Court will grant in part and deny in part GCU's Motion for the following reasons.

**I.    BACKGROUND**

Plaintiff began his final semester at GCU in January 2020. In early March, just before spring break, Arizona Governor Doug Ducey declared a public health emergency due to COVID-19. (Doc. 131 at 2 ¶ 1.) The following day, GCU President Brian Mueller published a letter to GCU's student body informing them how COVID-19 would impact the rest of the semester. (*Id.* ¶ 2.) Classes continued as normal until the Friday before spring break, March 13. (*Id.*) After spring break, nearly all classes would resume remotely. (*Id.*) Students were encouraged to return home. (*Id.*) GCU asked students who had been living on campus to share their anticipated living arrangements by filling out departure

plans. (*Id.* at 3 ¶ 5.)

On March 21, President Mueller issued another letter asking all students to leave campus as soon as possible and told students they could ask for a waiver to remain on campus. (*Id.* at 4 ¶ 11.) Two days later, GCU offered students who moved out by March 25 a housing credit—students needed only to communicate their intent to do so. (*Id.* at 5–6 ¶ 20.) Plaintiff immediately reported that he planned to move out early, a decision that led to his receiving a $450 housing credit. (*Id.* at 6 ¶ 21, 24; 136 at 6 ¶ 24.) Unused "Dining Dollars," the GCU meal plan currency, would be rolled into students' next semester balance or be refunded if students had graduated. (Doc. 131 at 6–7 ¶¶ 27–29.) Plaintiff received a $399.63 refund for his unused Dining Dollars. (*Id.* at 7 ¶ 30.)

Plaintiff filed this lawsuit in April 2020, alleging claims individually and on behalf of two classes for breach of contract, unjust enrichment, and conversion. (Doc. 1 at 17–22.) All of Plaintiff's claims stemmed from his position that GCU did not adequately refund him or other GCU students for the housing, meal plans, and other fee related services after GCU shut down its campus. (*Id.* at 2 ¶ 1.) The Court dismissed the conversion claims with prejudice in January 2021. (*See* Doc. 40 at 10–11.) The Court later certified Plaintiff's breach of contract claims but did not certify his unjust enrichment claims. (Doc. 72 at 14.) GCU now moves for summary judgment on all that remains. (Doc. 130 at 3.)

**II.     LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence

of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* at 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry its initial burden, the non-movant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the non-movant to establish the existence of a genuine issue of material fact. *Id.* at 1103. The non-movant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the non-movant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

### III. DISCUSSION

Plaintiff's claims are based on GCU's alleged failure to issue him and other students

partial refunds for "housing expenses, meal plans, and student fees after GCU sent students home" following spring break.  (Doc. 40 at 2.)  Plaintiff asserts breach of contract and unjust enrichment claims individually and on behalf of two classes of GCU students: (1) those who paid room and board ("Room & Board Class"); (2) those who paid other fees ("Fees Class").  (Doc. 1 at 17–20.)  The Court will address each in turn.

### A. Breach of Contract

#### 1. Room & Board

GCU asserts summary judgment is appropriate on the Room & Board breach of contract and unjust enrichment claims because it provided housing and food services for the remainder of the Spring 2020 semester.  (Doc. 130 at 10–14.)  To prevail on a breach of contract claim, plaintiffs must prove: (1) a valid contract exists; (2) a contractual obligation was breached; and (3) damages.  *See Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004).  The parties do not dispute the existence of these contracts.  The crux of the parties' dispute centers on whether GCU actually "provided" housing, food, and services associated with the "Other Fees."  (*See* Docs. 130 at 10–14; 135 at 6–8.)

GCU allows students to reserve rooms for each academic year, with students paying a semester rate.  (Doc. 131-4 at 11.)  Plaintiff reserved an on-campus room in "Cactus Apartments" and paid $3,200 for the Spring 2020 semester.  (*Id.* at 10–11.)  GCU also provides meal plans of varying costs.  (Doc. 136 at 12.)  Minimum pricing of meal plans is dependent on whether the student lived in apartments, studied remotely, lived in a residence hall, or if the student was a new on-campus resident.  (*Id.*)

GCU argues it did not breach its agreements with students to provide housing and food despite its preference for students to finish the semester from home.  (Doc. 130 at 10–11.)  GCU contends it merely encouraged, but did not require, Plaintiff and other students to return home.  (*Id.* at 11.)  And GCU requested students who wanted to continue living in the dorm to submit a waiver.  (*Id.*)  To encourage students to complete the Spring 2020 semester from home, GCU offered a housing credit to students who left campus by March 25, 2020.  (*Id.* at 13; Doc. 131 at 5–6.)  Students were not required to move their belongings

out of their dorms or apartments until the semester's end on April 23, 2020. (Doc. 130 at 13.) GCU contends students were never precluded from remaining on campus and "Residential housing, designated dining options, the library, [the] Health and Wellness Clinic, counseling services, and other campus resources [would] remain open on a limited basis." (*Id.* at 11; Doc. 131 at 2.) Similarly, GCU argues it continued to provide food services for those who remained on campus. (Doc. 130 at 13–14.) And per its prior existing policy, unused Dining Dollars would be rolled into students' accounts for the following semester or refunded if students graduated or disenrolled. (*Id.*)

Plaintiff counters that whether GCU provided housing and food is a dispute of material fact. (Doc. 135 at 6, 8.) He disagrees with GCU's framing its policy as "merely suggesting students return home" and asserts disputes of fact exist as to whether GCU's campus and food services remained open. (*Id.* at 7–8.) To support his characterization of GCU's conduct, Plaintiff cites the following six pieces of evidence:

1. GCU's March 20, 2020 statement that students "should return to their homes" and that "[n]on-compliance may result in you being asked to leave campus." (Doc. 136 at 16 ¶ 111.)
2. GCU's March 21, 2020 statement asking non-international students and students without special circumstances "to leave campus as soon as possible." (*Id.* at 17 ¶ 112.)
3. GCU student Nick Hedman's "understanding" that GCU was closing residence halls. (*Id.* ¶ 115.)
4. Plaintiff's "understanding that GCU was closing residence halls. (*Id.* ¶ 114.)
5. GCU President Mueller's video announcement confirming GCU "had to shut the campus down." (*Id.* at 19 ¶ 122.)
6. GCU President Mueller's April 2, 2020 statement that 95% of GCU's employees were working from home. (*Id.* ¶ 124.)

None of Plaintiff's cited facts dispute GCU's position, except for Hedman and Plaintiff's "understandings" of GCU's March 21 statement. The Court finds these

"understandings" unsupported and unpersuasive. First, Plaintiff takes GCU's March 20 statement out of context. That statement does not reflect a mandate for students to leave campus, rather it highlights GCU's preference that students stayed home as part of its belief they would be safer there. (*See* Doc. 136-1 at 8.) Furthermore, the Court reads GCU's threat of being asked to leave campus as a potential consequence for non-compliance with its COVID-19 monitoring and reporting requirements. (*See id.*); *see also BorgWarner Inc. v. Mariano*, No. CV-20-00321-PHX-SMB, 2021 WL 321891, at * 5 (D. Ariz. Feb. 1, 2021) ("The interpretation of a contract is generally a matter of law." (quoting *Powell v. Washburn*, 125 P.3d 373, 375 (Ariz. 2006))). Second, GCU's March 21 statement reflects that GCU *asked* and did not *mandate* students to leave campus. Third, Hedman and Plaintiff's understandings of GCU's March 21 statement are unsupported by the permissive nature of the statement itself. Fourth, GCU's description of its conduct as "shut[ting] down the campus" is consistent with its previous assertion that residence halls and other services would remain available on a limited basis. (*See* Doc. 131 at 2.) The Court finds the subsequent paragraph in Plaintiff's separate statement of facts relevant to this point—GCU was "pleased to report that [there was] less than . . . 1,000 students on campus." (Doc. 136 at 19 ¶ 123.) Finally, GCU employees' work status is irrelevant to whether GCU kept its residence halls and food services available.

Plaintiff points to no evidence, and the Court has found none, disputing that GCU continued to provide housing and food services through the end of Spring 2020. Notably, Plaintiff does not assert that GCU removed his or any other students' access to the room for which they paid. GCU informed students that if they had "extenuating circumstances, they [could] ask for a waiver to remain on campus by inputting that information into the personal departure plan located in their housing portal." (Doc. 136-1 at 10.) GCU did not define "extenuating circumstances" in this statement, though it mentioned international students' difficulty in traveling home, and Plaintiff points to no evidence about the strictness of GCU's unknown criteria. Plaintiff simply noted on his housing portal that he intended to move out early. (*See* Doc. 131 at 6 ¶ 21.) Despite communicating his intent

to move out (*see id.*), for which Plaintiff received a $450 housing credit (*see* Docs. 131 at 6 ¶ 24; 136 at 6 ¶ 24), Plaintiff continued to access his room on multiple occasions to collect his belongings (*see* Docs. 131 at 6 ¶ 25; 136 at 6 ¶ 25). Plaintiff never alleged or contended that he desired or attempted to live on campus between spring break and the previously established move out date. The Complaint and Response are similarly devoid of any allegations or arguments that members of the Room & Board Class were denied access to their rooms. The Court finds there are no genuine disputes of material fact as to whether GCU breached its contracts to provide housing to Plaintiff and the Room & Board Class.

The Court similarly finds no genuine disputes of material fact as to whether GCU breached its agreements to provide food services. Plaintiff argues GCU breached its obligations by offering only limited food services to on campus students and denying food services to students who left campus. (Doc. 135 at 8.) Plaintiff also disputes the sufficiency of GCU's refunding unused Dining Dollars. (*Id.*) While he disagrees with *how* GCU provided food, Plaintiff points to no evidence showing GCU failed to provide it. Plaintiff instead acknowledges that GCU provided take-out meals to less students. It is also undisputed that GCU had a pre-COVID-19 policy of refunding unused Dining Dollars to graduating or disenrolling students and rolling those Dining Dollars to later semesters for returning students. (Doc. 131 at 6–7 ¶¶ 28–29.) As a graduating student, Plaintiff received such a refund in the amount of $399.63. (*Id.* at 7 ¶ 30.)

In the absence of genuine disputes of material fact, the Court will enter summary judgment in GCU's favor as to the Room & Board breach of contract claims.

### 2.     **Other Fees**

GCU also asserts summary judgment is appropriate on the "Other Fees" breach of contract and unjust enrichment claims because it provided the services associated with those fees for the remainder of the Spring 2020 semester. (Doc. 130 at 14–19.) GCU argues there was no breach related to Other Fees because it provided the services paid for by its students. (Doc. 130 at 14.) Plaintiff counters that he and the Other Fees Class paid for access to various activities and uses of GCU's facilities. (Doc. 135 at 8–9.) GCU

charges an array of fees in addition to Room & Board with educational and recreational benefits. The Complaint alleges GCU retained the money Plaintiff and the Other Fees Class paid, depriving them of any of the fees' intended benefits. (Doc. 1 at 6–7, 19.) GCU defends each fee individually.

### 1. Canyon Connect Fee

This fee was charged to online and on-campus students to make course materials electronically available. (Doc. 131 at 8 ¶ 36.) It is undisputed that this fee was unaffected by COVID-19. (*Id.*; Doc. 136 at 7 ¶ 36.) The Court finds no facts to dispute GCU's contention that students received the benefits of this fee despite the shutdown.

### 2. Registration Deposit

New, incoming students are charged this one-time fee, which was similarly unaffected by COVID-19. (Docs. 131 at 8 ¶ 37; 136 at 8 ¶ 37.) The Court finds no disputes of fact to show students did not receive the benefit of this bargain.

### 3. Student Activity Fee

This $300 fee "funds student activities on campus including clubs, intramural sports, fine arts productions and other activities." (Doc. 46-2 at 5 ¶ 24.) GCU argues that despite its shutting down some activities and facilities, it provided the services associated with this fee because many other outdoor facilities remained open, including "a running track, soccer fields, baseball and softball fields, basketball courts, tennis facilities, an outdoor hockey rink, and a skate park." (*Id.* at 15–16.) Plaintiff responds that GCU failed to provide other activities, such as access to fine arts productions, campus life events, intramural sports, indoor recreation facilities, and special ticket pricing to GCU arena events. (Docs. 135 at 9; 136 at 8 ¶ 40.) GCU does not dispute that it did not provide access to these facilities and events, rather it cites Governor Ducey's Executive Order 2020-18, which "required all bars, gyms and movie theatres" to close in designated counties to defend its closing its indoor fitness centers and other facilities. (Doc. 130 at 15.) The Court finds genuine disputes of fact exist as to whether GCU breached its obligations associated with this fee.

### 4. Parking Fee

Students paid for access to specific parking lots for the Spring 2020 semester. (Doc. 131 at 9 ¶ 45.) GCU argues students continued to have access to those parking lots for the remainder of the semester. (*Id.* ¶¶ 45–46.) Plaintiff disputes this, arguing that GCU forced students to leave campus, thus preventing students from using their parking spots. (Doc. 136 at 9 ¶¶ 45–46.) For the reasons stated above, *supra* Sec. III(A)(1), the Court finds no dispute of fact exists to show that students lost their access to parking spots. Those spots remained available if students chose to remain on-campus.

5. Housing Application Fee

The housing application fee is a one-time fee to students applying for on-campus housing. (Doc. 131 at 9 ¶ 47.) It is undisputed that this fee was unaffected by COVID-19. (*Id.* ¶ 48; Doc. 136 at 9 ¶¶ 47–48.) The Court finds no dispute of fact exists to show students did not receive the benefits of this fee.

6. Graduation Fee

This is a one-time fee charged to all graduating students to fund administrative efforts related to verifying that students met their graduation requirements, were issued a diploma, and could receive official transcripts. (Doc. 131 at 9 ¶¶ 50–51.) It is undisputed that these services were unaffected by COVID-19. (*Id.* ¶ 52; Doc. 136 at 9 ¶ 52.) The Court finds no dispute of fact exists to show students did not receive this fee's benefits.

7. Educational Fees

GCU charges some specialized fees dependent on students' courses. These fees apply to specific programs and include the global students portfolio fee, hospitality management, the IT program, the nursing program, the worship arts premium, and other special courses. (Doc. 131 at 10–11 ¶¶ 54–71; 136 at 9–10 ¶¶ 54–71.) The parties agree, with the exception of the special courses fee, that services associated with these fees were provided as part of students enrolling in those specific courses or programs. (*Id.*) Plaintiff asserts that the special courses fees was supposed to fund on-campus and in-person amenities that were denied when GCU shut down its campus. (Doc. 136 at 10 ¶ 71.) Plaintiff specifically asserts that these fees were designed to provide clinical, lab, studio,

and personalized training. (*Id.*) While Plaintiff points to GCU's Policy Handbook to show what courses required what fees, (*see* Doc. 136-1 at 114–15), the Court finds no evidence to substantiate Plaintiff's assertions. In the absence of such evidence, the Court thus finds that no genuine dispute of material fact exists to rebut GCU's position that these services were unaffected by COVID-19 and so provided.

### 8. Health Fee

GCU contends its health center remained open through the end of the semester and actually increased its hours in response to COVID-19. (Doc. 130 at 17.) GCU also contends that students who left campus were given access to telephone and telehealth medical services. (Doc. 131 at 11 ¶ 73.) Plaintiff disputes whether GCU's health services were available to himself and similarly situated students. (*See* Doc. 136 at 10 ¶ 72.) Specifically, Plaintiff asserts the telehealth services were unavailable to him and other students residing outside Arizona. (*Id.* ¶¶ 72–73.) The Court thus agrees with Plaintiff that genuine disputes of material fact exist as to whether GCU provided him and other students with the health services funded by the health fee.

While the Court finds genuine disputes of material fact preclude summary judgment as to the student activity and health fees, GCU raises the defense of impossibility or impracticability. (Doc. 130 at 17–18.) GCU asserts that COVID-19 triggered government orders that ultimately frustrated its efforts to perform its contractual obligations. (*Id.* at 18.) Plaintiff does not argue that GCU should have kept its campus open, rather he seeks a prorated refund for the share of fees associated with GCU's shutdown. (Doc. 135 at 11.)

"It is well settled that when, due to circumstances beyond the control of the parties the performance of a contract is rendered impossible, the party failing to perform is exonerated." *Hannibal-Fisher v. Grand Canyon Univ.*, 523 F.Supp.3d 1087, 1096–97 (D. Ariz. 2021) (quoting *Garner v. Ellingson*, 501 P.2d 22, 23 (Ariz. Ct. App. 1972)). "However, even if GCU can prove that the defense applies to this case, the Restatement recognizes that it is generally appropriate to allow a party who has performed to seek restitution." *Id.* at 1097 (citing Restatement (Second) of Contracts § 272 cmt. b (1981)).

1  Here, Plaintiff and the Other Fees Class performed when they paid the student activity and
2  health fees. While COVID-19 may have justified GCU's non-performance, i.e. not
3  providing all services covered by the fees, Plaintiff and the Other Fees Class may seek
4  whatever restitution is deemed appropriate. The Court thus enters summary judgment in
5  GCU's favor on all fees except the student activity and health fees.

### B. Unjust Enrichment

Under Arizona law, "the existence of a contract specifically governing the rights and obligations of each party precludes recovery for unjust enrichment." *Physicians Surgery Ctr. of Chandler v. Cigna Healthcare Inc.*, 609 F.Supp.3d 930, 939 (D. Ariz. 2022) (quoting *USLife Title Co. of Ariz. v. Gutkin*, 732 P.2d 579, 584 (Ariz. Ct. App. 1986)). "A contract normally bars an action for unjust enrichment because it precludes a finding that the plaintiff is without an adequate remedy at law—a party deprived of benefits due under a contract generally has the ability to enforce the contract." *See Burge v. Freelife Int'l, Inc.*, No. 09–CV–1159–PHX–JA, 2009 WL 3872343, at *4 (D. Ariz. Nov. 18, 2009) (explaining that the *Brooks* rule rests on the assumption that the contract provides an adequate legal remedy). GCU conceded the existence of valid contracts related to all Plaintiff's claims. All unjust enrichment claims sought damages from the same rights and obligations as the contract claims. The Court will thus grant GCU's Motion for Summary Judgment as to all unjust enrichment claims to prevent impermissible double recovery. *Cf. Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 833 (D. Ariz. 2016) ("[A] plaintiff may bring an unjust enrichment claim where she asserts a right that is not subject to vindication in an action to enforce the contract.").

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting in part and denying in part GCU's Motion for Summary Judgment. (Doc. 130.)

…

…

1  The Court enters summary judgment in GCU's favor on all claims except Plaintiff and the
2  Other Fees Class's claims for breach of the student activity and health fees.
3  Dated this 21st day of August, 2023.

_____
Honorable Susan M. Brnovich
United States District Judge