# **EXHIBIT 2**

```
                                                              Page 1
 1             IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF ARIZONA

 3

 4   Carson Little, individually  )
     and on behalf of all others  )
 5   similarly situated,          )
                                  )
 6              Plaintiff,        )
                                  )
 7         vs.                    )  No. 2:20-CV-00795-PHX-SMB
                                  )
 8   HEATHER THOMEN, a single     )
     woman; and MATTHEW BALDWIN, a)
 9   single man,                  )
                                  )
10              Defendants.       )
                                  )
11   _____)

12

13

14     VIDEOTAPED ZOOM DEPOSITION OF BENJAMIN WILNER, Ph.D.

15                     V O L U M E   I

16                  (Pages 1 through 184)

17                     March 23, 2023
                         9:12 a.m.
18

19

20

21

22                           Reported by:
                             SHANNON STEVENSON, RPR, CCR
23                           Certificate No. 50461
                             BARTELT NIX
24   Prepared for:           3101 North Central Avenue, Suite 290
                             Phoenix, Arizona 85003
25   (Certified Copy)        (602) 254-4111
```



Page 22

```
 1  that.
 2      Q    What portion of your work regards testifying as
 3  an expert in legal matters?
 4      A    I do not --
 5           MS. HONECKER:  Objection.  Foundation.
 6           THE WITNESS:  I do not have a breakdown of
 7  that.
 8      Q    BY MR. SOLDATO:  Would you say you spend more
 9  than half your time in your daily work involved in expert
10  testimony of some time -- of some kind in legal matters
11  or less than half?
12           MS. HONECKER:  Objection.  Form and foundation.
13           THE WITNESS:  It really varies year to year and
14  month to month, so it would be hard for me to say.
15      Q    BY MR. SOLDATO:  Currently, what would you say
16  in the last month where would you place that percentage
17  of work that you do as an expert witness?
18           MS. HONECKER:  Objection.  Form.  Foundation.
19           THE WITNESS:  I can't tell you an exact
20  percentage.
21      Q    BY MR. SOLDATO:  Well, approximate, if you
22  will.
23           MS. HONECKER:  Objection.  Form.  Foundation.
24           THE WITNESS:  It's really hard for me to
25  approximate.
```

Page 23

```
 1      Q    BY MR. SOLDATO:  Okay.  Why is that?
 2           MS. HONECKER:  Objection.  Form.
 3           THE WITNESS:  It's because I am a quantitative
 4  person and I like to generate opinions based upon real
 5  numbers.  I don't want to speculate about numbers as you
 6  are asking me to do.
 7      Q    BY MR. SOLDATO:  The CV also says that you
 8  advise educational institutions on tuition setting
 9  issues.  What is that referring to?
10      A    So Alvarez & Marsal is a consulting firm and we
11  do lots of different things.  One of the things that the
12  firm is known for is assisting corporations and
13  institutions that are going through financial
14  difficulties.  And we have a division in the firm that
15  specializes in advising educational institutions going
16  through financial issues, and I am part of that team and
17  I go -- and as part of that team, I go and I provide
18  consulting experience to educational institutions on
19  various issues including on how to set tuition fees.
20      Q    Were you advising on those issues during the
21  time of the COVID pandemic?
22      A    I was.
23      Q    How many universities were you advising as to
24  how they should set tuition and fees during the COVID
25  pandemic?
```

Page 24

```
 1      A    As I said before, I can't disclose clients or
 2  the amount of clients that my firm has.
 3      Q    Why is it that you can't disclose the amount of
 4  universities that you were consulting with?
 5      A    My contract states that -- I'm sorry, the
 6  contract the firm signs says that I have to keep
 7  information confidential.
 8      Q    Okay.  And I'm not asking about any specific
 9  information.  I'm asking about overall numbers.  Is there
10  some -- are you saying that there is some contract
11  provision that doesn't allow you to discuss the overall
12  number of clients that your firm has?
13      A    I'm not a lawyer.  I don't know.  I have been
14  advised by my general counsel to keep information
15  confidential.  If you would like, I'm happy to call my
16  general counsel and see if can I disclose numbers.
17      Q    That would be great.
18           MS. HONECKER:  Proprietary information, so if
19  you want us to talk about this offline, we can do that,
20  but I would suggest right now since this is proprietary
21  business information not specifically related to GCU,
22  that we move on.
23      Q    BY MR. SOLDATO:  I appreciate that.  We'll come
24  back to that during the first break here.
25           As part of your work advising educational
```

Page 25

```
 1  institutions during the COVID pandemic as to fee setting
 2  or tuition setting, did you have to advise on whether to
 3  refund fee amounts that had already been paid to
 4  students?
 5      A    That -- to the best of my recollection, that
 6  wasn't an issue that I dealt with as part of my
 7  consulting.
 8      Q    How is it that you recommend -- strike that.
 9  Let me move on.
10           Your CV also references some time that you
11  worked as a research assistant or conducted academic
12  research of some kind.  Has any of your research
13  throughout the course of your career dealt with issues
14  related to educational institutions in either tuition
15  setting or fee setting?
16      A    When I was an academic, I studied how people
17  learn.  When I was an academic, I went and was on various
18  committees where we discussed tuition issues and
19  enrollment issues.
20      Q    What do you mean by that?  What committees were
21  you on that discussed tuition and enrollment issues?
22      A    As an academic, you kind of have three roles to
23  do teaching, research -- actually, four.  Teaching,
24  research, consulting, and then what's called service
25  where you have to assist the university in how it runs.
```



Page 150

1   Q   As far as your opinion goes, do you think
2   Mr. Kantrowitz did anything correctly in his report?
3   A   He may have spelled his name correctly.
4   Q   Anything besides that?
5       MS. HONECKER:  Objection.  Form.  Foundation.
6       THE WITNESS:  That's not something I have even
7   considered.
8   Q   BY MR. SOLDATO:  You have been retained by
9   other universities to testify relating to COVID fee or
10  tuition reimbursement cases; is that correct?
11  A   No.
12  Q   No?  Not in a single other instance have you
13  testified about fee-related university cases?
14  A   I have testified, but I have not been retained.
15  Q   And why do you distinguish between the two?
16  You testified in cases that you weren't retained in?
17  A   As far as I know, I personally am not retained
18  by any client.
19  Q   Oh, I appreciate that.  That's because A&M
20  retains your services or people retain A&M specifically?
21  A   That is correct.
22  Q   Great.
23      And you have been, I guess, assigned to various
24  cases where A&M was retained to provide some expert
25  testimony on university fee or tuition recording cases

Page 151

1   related to COVID-19?
2   A   Alvarez & Marsal has been retained to provide
3   certain consulting services relating to tuition issues.
4   Some of those matters resulted in expert testimony.
5   Q   You gave deposition testimony in the matter of
6   Marc Schultz and others versus Emory University; is that
7   correct?
8   A   I think it's Marc Schultz.  Is that what you
9   said?
10  Q   It is.
11  A   Yes.
12  Q   Was that case related to whether or not Emory
13  should have refunded either fee or tuition amounts paid
14  by students?
15  A   Amongst other things, yes.
16  Q   And I assume your opinion there was that Emory
17  should not have to refund even a single penny of fee or
18  tuition payments made by students?
19  A   Again, I am not allowed to disclose
20  confidential information from other cases.
21  Q   It's not confidential, it's public deposition
22  testimony.  If you believe that your entire deposition of
23  your opinion was confidential, that's fine, but unless
24  you believe that to be the case, I would please ask you
25  to answer the question.

Page 152

1       MS. HONECKER:  Peter, was the deposition
2   transcript filed in court?
3       MR. SOLDATO:  No speaking objections.
4   Q   BY MR. SOLDATO:  Do you have any reason to
5   actually believe that that entire deposition and your
6   opinion therein was entirely confidential?  What facts or
7   information do you base that on?
8       MS. HONECKER:  Objection.  Form and foundation,
9   and potentially privileged since you won't tell me if it
10  was publically filed or not.  Subject to a protective
11  order.
12      THE WITNESS:  And I don't know whether a report
13  was filed in that case, whether my testimony was filed, I
14  don't know any of that.  So, therefore, I can't violate
15  my client's confidentiality.
16  Q   BY MR. SOLDATO:  I'm asking about your opinion.
17  Your opinion in a matter is not confidential.  Your
18  opinion is not confidential.  What was your opinion?  Was
19  your opinion that Emory should refund fee or tuition
20  amounts to students?
21      MS. HONECKER:  Objection.  Form, foundation,
22  and potentially privileged information.
23      THE WITNESS:  Again, you want me to talk to
24  general counsel?  As far as I have been told, I cannot
25  discuss other clients.

Page 153

1   Q   BY MR. SOLDATO:  That's fine.  Let's take a
2   break, you call your general counsel right now, and if
3   you want to stand behind that objection, then we're going
4   to pause this deposition and either get the judge on the
5   phone or suspend the deposition and return after we've
6   had this issue taken care of.  Would you prefer to call
7   your general counsel right now?
8   A   If you want, I could try to get a hold of him.
9   Q   I do.  We'll take ten minutes, please call your
10  general counsel and ask if you can't provide information
11  about your opinions.  And I'm looking, just so you are
12  aware, you list at least six cases where you testified in
13  fee- or tuition-related matters in your report, and I'll
14  be asking you about your opinion relative to all those
15  matters.  I'm not asking about other documents.  I'm
16  asking only about your opinion.  Ask your general counsel
17  that, and I will be back in ten minutes.
18      THE VIDEOGRAPHER:  We are going off the record.
19  The time is 2:51 p.m.
20      (Break taken at 2:51 p.m.)
21      (Back on the record at 2:57 p.m.)
22      THE VIDEOGRAPHER:  We are back on the record.
23  The time is 2:57 p.m.
24  Q   BY MR. SOLDATO:  Okay.  Dr. Wilner, we took a
25  short break.  Obviously we're back on now.



Page 154

1     Did you have a chance to speak with your
2  general counsel?
3     A    I left him a voicemail message.
4     Q    Are you prepared to discuss your opinions
5  relative to -- let's start with Marc Schultz versus Emory
6  University?
7     A    I believe that information relative to that
8  case is subject to confidentiality provisions, protective
9  orders, and things like that.  As of right now, I don't
10 think I can discuss what work that I did in that case.
11        MS. HONECKER:  Counsel, Peter, I'd like to add
12 an objection.  Our objection is that we believe this line
13 of questioning is outside the scope of relevant
14 discovery.  These are different schools, different facts,
15 and different states, so we don't see that it's relevant.
16 Just want to make sure you were aware of that objection
17 as well.
18        MR. SOLDATO:  Thank you.  Do you have any other
19 basis for your objection, Kathryn, besides those you just
20 stated?
21        MS. HONECKER:  Yes.  So we think it's outside
22 the scope of relevancy, we're not going to agree to
23 suspend the deposition if that's still on your mind.  So
24 if you have any questions, he's here now.  Ask all your
25 questions, you can take it to the Court and ask the Court

Page 155

1  to have him answer any questions he won't answer.  We are
2  not going to agree to just stop the deposition so you can
3  think of new questions and come back.
4        MR. SOLDATO:  Thank you.
5     Q    BY MR. SOLDATO:  Marc Schultz, et al. versus
6  Emory University, it's listed in your report on Page 3 of
7  your CV.  That case generally regarded, I think you
8  testified earlier, whether or not Emory University should
9  refund either fee or tuition amounts to students; is that
10 correct?
11    A    I believe that the publicly filed complaint
12 says that, yes.
13    Q    And you offered an opinion relative to that
14 publicly-filed complaint?
15    A    I did.
16    Q    In re:  Boston University COVID-19 Refund
17 Litigation, that was about the refund, obviously, of fees
18 or tuition to Boston University students regarding
19 COVID-19 shutdowns.  Is that also correct?
20    A    I believe that that was an aspect of the
21 complaint, yes.
22    Q    And you offered an opinion relative to that
23 complaint?
24    A    I did.
25    Q    Are you arguing that that opinion is somehow

Page 156

1  confidential?
2     A    Again, as I said multiple times, I don't make
3  arguments.  And secondly, I'm saying --
4     Q    You are making a legal argument here.  Whether
5  or not something is confidential is a legal argument.
6        Are you saying that that is confidential?
7     A    I am saying that Alvarez & Marsal's engagement
8  letter requires me to keep client information
9  confidential.  I -- as I said, I'm not a lawyer, I don't
10 have legal opinions.  That's why I offer to and try to
11 have conversations with my general counsel, but given
12 he's in New York and it's 6:00 in New York, he didn't
13 answer.
14    Q    Alec Faber and Ahnaf Rahman and others versus
15 Cornell University, did that case also -- was that also
16 about COVID-19 fee or tuition refunds to students?
17    A    I believe that is the case, yes.
18    Q    Did you offer an opinion?
19    A    I think that was said in the publicly available
20 complaint.
21    Q    Did you offer an opinion in that matter?
22    A    I did.
23    Q    Penny Ninivaggi and others versus University of
24 Delaware & Hannah Russo versus University of Delaware, is
25 that also a COVID-19 fee or tuition refund matter?

Page 157

1     A    And just so we're on the same page and you
2  sometimes said and others, the actual caption says et al.
3  Do you mean those to be synonyms for each other?
4     Q    I do.
5     A    Okay.  I'm sorry, could you repeat the
6  question.
7     Q    Ninivaggi versus University of Delaware, Russo
8  versus University of Delaware, is that a COVID-19 fee or
9  tuition refund case?
10    A    I believe that was what was stated in the
11 publicly available complaint, yes.
12    Q    And you offered a refund in that -- or, sorry.
13 You offered an opinion.  You didn't offer a refund, I
14 know that.  You offered an opinion in that matter?
15    A    Well, I don't recall the exact fees that were
16 charged.  I might have provided a fee revenue fund to the
17 university based upon fees, if that's what you are
18 asking, but I don't think --
19    Q    My question was:  You offered an opinion, an
20 expert opinion in that matter?
21    A    I did.
22    Q    Nicholas Bergeron and Nick Quattrociocchi.  I
23 should tell --
24    A    I don't know how to pronounce his name either.
25    Q    And for the court reporter's sake, these names



Page 158

1  that I'm referring to are all on Page 3 of Exhibit 1 to
2  Exhibit 1.
3       A    I believe it's Exhibit 2 to Exhibit 1.
4       Q    Oh, thank you.  Exhibit 2 to Exhibit 1.
5            Bergeron versus Quattrociocchi versus Rochester
6  Institute of Technology, is that also COVID-19 refund
7  case?
8       A    I think it's Bergeron and Quattrociocchi.  I
9  think you said first Quattrociocchi.  But, yes, that
10 publicly available complaint relates to COVID-19 issues.
11      Q    And you offered an opinion in that matter?
12      A    I did.
13      Q    And that opinion was relative to whether or not
14 students should -- or whether or not Rochester Institute
15 of Technology should refund either fee or tuition amounts
16 to students?
17      A    I offered opinions in that case, I can't say
18 what those opinions were.
19      Q    Brooks Smith versus The Ohio State University,
20 was that a COVID-19 refund of fee or tuition case?
21      A    In general, yes.  That's what is stated in the
22 publicly available complaint.
23      Q    Did you offer an opinion in that matter?
24      A    I believe I did, yes.
25      Q    And was it relative to whether or not The Ohio

Page 159

1  State University should refund any amounts to students?
2       A    As I sit here right now, I don't know if I can
3  disclose confidential information relating to another
4  client of Alvarez & Marsal.
5       Q    Has A&M calculated how much money it has made
6  as a result of testifying in COVID-19 refund cases?
7       A    Not that I'm aware of.
8       Q    It looks like you've been involved in at least
9  six of them?
10      A    If that's what my testimony shows.
11      Q    You've also testified in Roscoe Evans versus
12 Brigham Young University.  That would make a seventh?
13      A    I did not testify in that case.
14      Q    Sorry, you provided an expert report?
15      A    I did.
16      Q    Do you wish to discuss what your opinion was in
17 that matter?
18      A    I don't believe I can discuss confidential
19 client information -- confidential information from other
20 Alvarez & Marsal's clients.
21      Q    And you believe that your report in Evans
22 versus Brigham Young University is somehow confidential?
23      A    Again --
24           MS. HONECKER:  Objection.  Foundation.
25           THE WITNESS:  Whether or not the report is

Page 160

1  confidential -- so, I am not sure what the line is that I
2  can go and discuss.  If you go and ask me to read
3  something that is in the public domain, I can read that.
4  Whether you want explanations about it that's not written
5  word, I do not know if I can say that or not.  That's why
6  I complied with your request to call my general counsel.
7       Q    BY MR. SOLDATO:  So just to be clear, you are
8  unsure whether or not you can answer my questions about
9  your opinion in Evans versus Brigham Young University?
10           MS. HONECKER:  Objection.  Form.
11           THE WITNESS:  It depends upon what questions
12 you ask me.
13      Q    BY MR. SOLDATO:  What was your opinion in that
14 matter, did you believe that Brigham Young University
15 should refund either fee or tuition amounts to students?
16      A    Again, I do not know as I sit here right now
17 what confidentiality restrictions I have that I can say
18 or can't say.
19      Q    Are you aware of any confidentiality
20 restrictions that you have in regard to these cases --
21 any specific confidentiality restrictions?
22      A    I am aware that in every engagement letter that
23 Alvarez & Marsal sends to its clients, or at least every
24 one that I send, states that client information will be
25 kept confidential.  Whether there are additional legal

Page 161

1  protective orders or other things, I think there are in
2  some, but I do know specifically that in every engagement
3  letter I send there is a confidentiality section.
4       Q    So you are standing on your refusal to answer
5  my questions regarding the specifics of any of these, at
6  this point it's one, two, three, four, five, six, seven,
7  university fee or tuition refund cases based on your
8  assumption that there might be confidentiality issues?
9            MS. HONECKER:  Again, for the record, defendant
10 is also objecting on behalf of the relevancy factor.
11           MR. SOLDATO:  Kathryn, for the record, are you
12 instructing him not to answer?
13           MS. HONECKER:  I am not instructing him not to
14 answer.  We are objecting on the scope of relevancy of
15 discovery.
16           MR. SOLDATO:  Great.  And for the record, at
17 any point along the line of these questions, your
18 previous objection specifically, did you mean to state
19 that you were instructing him not to answer or was that
20 just an objection to the question also?
21           MS. HONECKER:  Correct.  We are not instructing
22 him not to answer.  He has -- they have their own counsel
23 at that firm that will give them instructions.  We are
24 only objecting with regard to the relevancy or form or
25 foundation, however I have objected in the past.

Page 162

1    MR. SOLDATO:  Okay.
2    Q   BY MR. SOLDATO:  Dr. Wilner, do you stand
3  behind your assertion of confidentiality still?
4    A   Again, I am not a lawyer.  What you are asking
5  me is to interpret something, a legal document that I am
6  not capable of doing.  I went and I did my best to try to
7  get a legal answer, and so, therefore, out of an
8  abundance of caution, I can't say what you want me to
9  say.
10   Q   To be very clear, and then I'll move on, I'm
11 not asking you about any documents, I'm not asking you to
12 interpret any documents.  I'm asking you about your
13 opinions in these matters.  And you are saying that the
14 opinions you provided in these seven cases we've
15 discussed -- discussed so far, your belief is that your
16 opinion itself is confidential?
17       MS. HONECKER:  Objection.  Form.  Outside the
18 scope of discovery.
19       THE WITNESS:  So first of all, I do not know
20 the answer, and that's why I asked, per your request, my
21 general counsel.  But given I cannot get a hold of him, I
22 am not in a position to say legally what I am able to or
23 not able to go and discuss.  I do know that in my
24 engagement letters it says that work -- I think it says
25 work papers are confidential.  What that line is, I don't

Page 163

1  know.  This is a legal question that I am not equipped to
2  answer.
3    Q   BY MR. SOLDATO:  You prepared to testify here
4  today; correct?
5    A   What do you mean "prepared"?
6    Q   You said earlier you prepared in order to be
7  ready for this deposition today; correct?
8    A   I went and I reviewed certain documents related
9  to GCU, I talked to my staff, I went and talked to
10 counsel prior to this deposition, yes.
11   Q   And you knew that we were going to be
12 discussing, obviously, matters related to the refund of
13 fees and tuition payments by students -- the refund to
14 students by a university relative to the COVID-19
15 pandemic, you knew that that was the general topic at
16 issue in Little versus GCU; right?
17       MS. HONECKER:  Objection.  Form.  Foundation.
18       THE WITNESS:  First, I had no clue what
19 questions you were going to ask me.  Sir, again --
20       MR. SOLDATO:  That's not the question.
21       MS. HONECKER:  Please note and object for the
22 record that counsel has repeatedly been interrupting the
23 witness during the entire deposition and not allowing
24 full and complete answers.
25       MR. SOLDATO:  Thank you.

Page 164

1    Q   BY MR. SOLDATO:  That was not the question,
2  sir.
3        The question was:  You knew the general topic
4  of the deposition would be whether or not fee and tuition
5  amounts should be refunded to GCU students?
6        MS. HONECKER:  Objection.  Form and foundation.
7        THE WITNESS:  It is my understanding that
8  questions would be related, as you just said in that last
9  statement, not in your prior question, relating to GCU
10 students, yes.
11   Q   BY MR. SOLDATO:  And you know that you've
12 provided testimony on at least seven, possibly eight
13 because I'm seeing there is McDermott versus Ohio State
14 University also, eight other cases involving the same
15 general matter and you are refusing to discuss your
16 opinions today relative to those other matters; correct?
17       MS. HONECKER:  Objection.  Form.  Foundation.
18 Outside the scope of relevant discovery under Rule 26.
19       THE WITNESS:  I am not saying that I cannot do
20 it.  I am saying I need legal guidance to understand what
21 my legal obligations are.
22       MR. SOLDATO:  Exhibit 9 I just attached it to
23 the chat.
24       (Deposition Exhibit No. 9 was introduced
25 identification and attached hereto.)

Page 165

1    Q   BY MR. SOLDATO:  Is this your report in the
2  matter of Roscoe Evans versus Brigham Young University?
3        MS. HONECKER:  Object to the scope of
4  relevancy.  Outside relevant discovery.
5        THE WITNESS:  This document that you show is in
6  a different form than I might have written, but
7  potentially it is.
8    Q   BY MR. SOLDATO:  What do you mean "potentially
9  it is"?
10   A   Just like I went and said when you went and
11 gave me -- I think you put up, I think it's, Exhibit 1 to
12 this deposition, you asked me if this is my report.  I
13 went and stated I would need to look through every page,
14 every document -- every page, every word to confirm it.
15 This potentially is, but I've not gone through every
16 page, every word of something that I did over a year --
17 over a year, year and a half ago.
18   Q   I just attached Exhibit 10.  Is this your
19 report in McDermott versus The Ohio State University.
20       (Deposition Exhibit No. 10 was introduced
21 identification and attached hereto.)
22       THE WITNESS:  Same answer as I did before.
23   Q   BY MR. SOLDATO:  Would you like that we go off
24 the record and you can take as much time as you need to
25 confirm that these are your reports?

